IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JERRY A. WINN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:08-cv-00532 |
| ) | Judge Trauger |
| CRICKET COMMUNICATIONS, INC. ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the court is the Motion for Summary Judgment of Defendant Cricket Communications, Inc. (Docket No. 26), to which the plaintiff has responded (Docket No. 33), and the defendant has replied (Docket No. 39). For the reasons discussed herein, the defendant's motion will be granted.

## BACKGROUND

The plaintiff, Jerry Winn, is a sixty-five year old woman who was employed by the defendant, Cricket Communications, Inc. ("Cricket"), at various retail locations from February 14, 2000 until her termination on January 23, 2007.[1]

In January 2006, Ms. Winn worked at Cricket's Green Hills location. At that time, Rick Houston served as the manager of both Cricket's Green Hills location and its Clarksville location. Mr. Houston approached Ms. Winn to suggest that she transfer to the Clarksville

---

[1] Unless otherwise noted, the facts are drawn from Plaintiff's Response to Defendant Cricket Communications, Inc.'s Statement of Undisputed Facts (Docket No. 35) as well as the declarations, deposition transcripts, and exhibits submitted by the parties.

location, stating that he believed it would reduce her commute, as she lived in Clarksville, and that he wanted to transfer Michelle Walker, who had expertise in closing procedures and inventory management, from the Clarksville location to the Green Hills location to help train employees there.  Ms. Winn informed Mr. Houston that she preferred not to work at the Clarksville location, stating that she did not like the schedules that employees at that location were required to work and that many of the employees at the Clarksville location were "in their early 20s" and "if you're working with a group of just 20-year-olds, day after day, there's not a whole lot that you can relate to conversation wise."  However, Mr. Houston suggested that Ms. Winn "try it and see how it works," and Ms. Winn subsequently transferred to the Clarksville location.  Although she claims that Mr. Houston was aware that she was unhappy with this arrangement, Ms. Winn never asked for a transfer back to the Green Hills location.  Subsequently, in the summer of 2006, Ms. Walker became the Inventory Sales Representative for both the Green Hills and the Clarksville locations.  In this role, Ms. Walker was responsible for tracking inventory and ensuring that inventory was properly secured by company employees.  Among Cricket employees, Ms. Walker was known as the company "snitch."

On September 20, 2006, Ms. Walker and Mr. Houston discovered that the inventory storage cabinets at the Clarksville location had been left unlocked overnight.  Ms. Winn had been responsible for closing the previous night but denied that she had left the cabinets unlocked.  Ms. Winn asserts that two other employees who also had worked the previous day took responsibility for failing to lock the cabinets and notes that the locks on the cabinets were in "terrible shape" and that the cabinets could be opened easily, even when locked.  Nevertheless,

2

Mr. Houston disciplined Ms. Winn for failing to secure inventory by issuing a Performance Improvement Plan ("PIP") that was to remain in effect until December 4, 2006.

On November 14, 2006, Ms. Walker discovered that the inventory storage cabinets at the Clarksville location again had been left unlocked overnight and informed Mr. Houston of this fact. Ms. Winn and Steven Butler, another employee, both had been responsible for closing the previous night. Ms. Winn again denied responsibility for leaving the cabinets unlocked, stating that she had locked the cabinets and that Mr. Butler later unlocked them inadvertently, believing that he was locking them. As a result of both this incident and complaints that Cricket had received about Ms. Winn's customer service, Ms. Winn's PIP, which was still in effect from the September incident, was extended until February 27, 2007. Mr. Butler was also issued a PIP for failing to secure inventory as a result of this incident.

The following day, Angelo Carruthers, an assistant manager at the Clarksville location, asked employees, including Ms. Winn and her colleague Sh-Landa Ellison, to call recent customers to advise them of new offers and price plans offered by Cricket. Ms. Winn informed Mr. Carruthers that she had misplaced the log listing her recent customers and, therefore, was unable to make these follow-up calls. Ms. Ellison, however, asked Mr. Carruthers if she could offer her customers a certain cell phone at a discount to encourage her customers to add an additional line, and Mr. Carruthers gave her permission to do so. Ms. Winn states that she was never informed that she could offer this discount to her customers nor that she could make a request to management to offer a particular discount.

On November 20, 2006, Ms. Winn emailed Mr. Houston and several members of Cricket's upper management about the discount that Mr. Carruthers permitted Ms. Ellison to

3

offer to her customers.  Ms. Winn's email stated, "ShaLanda [*sic*] could have informed everyone, but she choose [*sic*] not to and Angello [*sic*] also chose not to inform everyone.  This is not being fair as we should all work as a team, right?  This is discrimination, the way I look at it."  In her email, Ms. Winn also complained about her work schedule, stating that she was scheduled to close more often than were other employees.

After Ms. Winn sent the email, Cricket's Human Resources Manager, Larinda Justice, investigated Ms. Winn's complaint of discrimination.  In an interview with Ms. Justice, Ms. Winn reiterated her complaint regarding the discount that Ms. Ellison was permitted to offer to her customers and stated that she thought she was being discriminated against to the extent that "the market was 'willfully holding back sales information from her,'" although, in neither her email nor her meeting with Ms. Justice, did Ms. Winn specify age as the basis of the discrimination she alleged.  Also during the meeting, Ms. Winn informed Ms. Justice that she believed she was scheduled to close more often than were other employees.  Ms. Justice audited the weekly schedules and concluded that there was no basis for Ms. Winn's complaint that she was scheduled to close more often than were other employees and further concluded that there was no basis for Ms. Winn's complaint of discrimination.

According to Cricket, on the morning of January 17, 2007, while Ms. Winn's extended PIP was still in effect, Ms. Walker discovered that the inventory storage cabinets at the Clarksville location had, once again, been left unlocked overnight after Ms. Winn had been responsible for closing.  Later that day, Mr. Houston investigated the matter, interviewing Ms. Walker and speaking with Ms. Winn.  Ms. Winn informed Mr. Houston that she had not left the cabinets unlocked the night before.  According to Mr. Houston, Ms. Winn also told him that, if

4

she had left the cabinets unlocked, it had been an oversight, although Ms. Winn denies that she ever acknowledged the possibility that she may have left the cabinets unlocked.

Mr. Houston subsequently requested that Ms. Winn be terminated, citing the three incidents in which Ms. Winn was alleged to have failed to secure inventory as the basis for her termination and providing detailed descriptions of those incidents, as well as noting, briefly, Ms. Winn's poor customer service record. Ms. Winn was terminated on January 23, 2007.

## ANALYSIS

The plaintiff has asserted claims of age discrimination and retaliation arising under the Age Discrimination Employment Act ("ADEA"), and the defendant has moved for summary judgment with respect to those claims.

**I.      Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh

5

Case 3:08-cv-00532   Document 40   Filed 05/20/09   Page 5 of 15 PageID #: 414

the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 431 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

## II.  ADEA Claims

Claims brought under the ADEA are analyzed according to the familiar *McDonnell Douglas* framework. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (applying *McDonnell Douglas* in ADEA case); *Johnston v. O'Neill*, 130 Fed. Appx. 1, 7 (6th Cir. 2005) (same). Under that framework, a plaintiff must establish a *prima facie* case of

6

discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff carries that burden, the defendant must articulate a legitimate, non-discriminatory reason for its actions. *Id.* at 802-03. If the defendant does so, the plaintiff must show that the reason proffered by the defendant is merely a pretext for discrimination. *Id.* at 804.

*A. Age Discrimination*

To establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must demonstrate that (1) she was at least 40 years old at the time of the alleged discrimination; (2) she was subject to an adverse employment action; (3) she was otherwise qualified for the position; and (4) she was replaced by a substantially younger applicant. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 368 (6th Cir. 1998). Here, Cricket concedes, for the purposes of summary judgment, that Ms. Winn can establish that her termination constitutes a *prima facie* case of age discrimination. Cricket argues, however, that Ms. Winn's repeated failure to secure inventory constitutes a legitimate, non-discriminatory reason for terminating Ms. Winn's employment and that Ms. Winn cannot establish that this reason was actually a pretext for discrimination.

A plaintiff may establish pretext by demonstrating that the reason proffered by the defendant for her termination (1) had no basis in fact; (2) did not actually motivate the defendant's conduct; or (3) was insufficient to warrant the defendant's conduct. *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008) (citing *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)); *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). "The 'plaintiff must produce sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants . . . did not honestly believe in the proffered nondiscriminatory reason for [the] adverse employment action.'"

7

*Mickey*, 516 F.3d at 526 (citing *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001)).

Ms. Winn attempts to satisfy her burden of demonstrating pretext by arguing that Mr. Houston had a preference for younger employees, noting that newer hires were paid less than veteran employees. She states that Mr. Houston made this preference known when, upon his arrival as her manager, he stated "out with the old, in with the new." (Docket No. 36 Ex. 1 at 104; Docket No. 39 Ex., Winn Dep. at 134.) She further states that Mr. Houston formulated and then implemented a plan to remove older employees and replace them with younger employees. As part of this plan, she claims that Ms. Walker closely "watched" everything older employees did. Further, she argues that the first two instances in which she was held responsible for not locking the inventory storage cabinets were not actually her fault and that, in the third instance, she was falsely accused of failing to lock the cabinets by Ms. Walker.

Ms. Winn's argument, however, finds no support in the facts contained in the record, and Ms. Winn presents nothing other than her own vague suspicions to document the elaborate conspiracy allegedly engineered by Mr. Houston. First, although Ms. Winn places great emphasis on Mr. Houston's statement "out with the old, in with the new," she herself testified that she interpreted that statement not as an indication of a preference for younger employees but, rather, as an indication that Mr. Houston "was going to run it his way and only his way. That it didn't matter what anyone else was doing or how they had been working before. Everything was going to be reformed." (Docket No. 39 Ex., Winn Dep. at 135.) Moreover, courts have held that the phrase "out with the old, in with the new" is simply a colloquialism does not establish evidence of age-based discrimination or pretext where, as here, there is no evidence that the

8

phrase was used in a discriminatory manner. *E.g.*, *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1063 (7th Cir. 2003); *Welch v. First Albany Corp.*, No. 97-cv-0861, 1999 WL 1069525, at *1 (N.D.N.Y. Nov. 1, 1999). Additionally, although Ms. Winn argues that Cricket's preference for younger employees was evident in its hiring practices, she has presented no evidence whatsoever regarding the ages of the individuals who *applied* for jobs with Cricket, and, thus, her claim that Cricket preferentially hired only younger applicants is based on nothing more than speculation.

Further, it is undisputed that, in September 2006 and November 2006, the inventory storage cabinets at the Clarksville location were found unlocked after Ms. Winn had been responsible for closing on the previous night. That Ms. Winn makes excuses to explain the fact that the cabinets were unlocked on those two occasions—by arguing that others had left the cabinets unlocked or that the locks were in poor condition—does not change the fact that locking the cabinets was Ms. Winn's responsibility and that the cabinets were not locked. As for the third incident in which the cabinets were found unlocked in January 2007, which immediately preceded her termination, Ms. Winn vehemently denies that she failed to lock the cabinets, arguing that she is certain she locked the cabinets because she knew she was being "watched." Instead, she posits that Ms. Walker, who was alone when she discovered the cabinets were unlocked, simply was lying.[2] Once again, however, there is nothing other than Ms. Winn's own speculation that would suggest that Ms. Walker was lying, either on her own initiative or at the behest of Mr. Houston, nor any reason for Mr. Houston to have doubted the veracity of Ms. Walker's report.

---

[2]Ms. Winn makes the utterly specious argument that the timing of these three incidents somehow calls Mr. Houston's motives into question because they each occurred approximately sixty days apart.

9

Ms. Winn also alleges that she was treated differently than younger employees in a number of regards. Although this alleged differential treatment would appear to have little to do with the question of whether Cricket's stated reason for Ms. Winn's termination was pretextual, Ms. Winn argues that it is indicative of Mr. Houston's preference for younger employees and his plan to replace older employees with younger employees and that it reflects negatively on his credibility. First, she argues that her transfer to the Clarksville location evidences Mr. Houston's poor treatment of her. However, she transferred to the Clarksville location with the explicit understanding that she could "try it and see how it works," and she testified that she never approached Mr. Houston after the transfer to inform him that it was not working well or that she would like to transfer back to the Green Hills location. (Docket No. 29 Ex. 1 at 50-51.) She also complains that younger employees were provided with preferential access to merchandise discounts and promotions—namely, the discount that Ms. Ellison was permitted to offer to her customers. This characterization of that incident does not accord with the evidence, however, as Ms. Ellison had requested permission, of her own volition, to offer that discount, unlike Ms. Winn.[3] (Docket No. 35 ¶¶ 45-50.)

Ms. Winn next claims that Mr. Houston and Ms. Walker closely "watched" everything older employees did. However, though she complains particularly about the conduct of Ms. Walker, whom she refers to as the company "snitch," Ms. Winn testified that Ms. Walker targeted everyone, regardless of age, stating that "[a]nybody that [Ms. Walker] could get in trouble or do anything, she would do it" and that Ms. Walker was "out to get whoever she

---

[3] It is also worth noting that Ms. Winn had lost her log and was, in fact, unable to make follow-up calls like Ms. Ellison and that Ms. Winn testified that she did sell one of the phones at the discount after learning of it. (Docket No. 35 ¶¶ 45, 50.)

10

could." (Docket No. 29 Ex. 1 at 120, 140-41.)  Further, it was Ms. Walker's role with the company to identify and report departures from company policy; there is no reason to believe that Ms. Walker was "watching" Ms. Winn or other older employees any more closely than she was watching everyone else, as her job required.[4]

Likewise unsupported by the record are Ms. Winn's claims that she was scheduled to work more nights and subject to harsher discipline than were younger employees.  Ms. Justice testified that she conducted an audit of the schedule and did not find any evidence that younger employees had any preference in scheduling, and Ms. Winn does not provide any evidence to contradict Ms. Justice's conclusion beyond her own unfounded perceptions.  Further, Ms. Winn does not dispute that, between July 2006 and December 2006, Cricket also disciplined at least four employees who were in their twenties for precisely the same conduct for which Ms. Winn was disciplined—failing to secure inventory.  (Docket No. 35 ¶¶ 21-29, 33-39; Docket No. 29 Exs. 5-7, 9.)  Ms. Winn argues that none of these individuals was terminated for failing to secure inventory, as she was.  However, to the contrary, one of those four younger employees ultimately

---

[4]Ms. Winn relies on the declaration and deposition testimony of Melody Roberts, another older employee, to demonstrate that older employees were treated differently.  (*See* Docket No. 36 Ex. 2; Docket No. 37.)  Ms. Roberts' testimony, however, suffers the same shortcomings as that of Ms. Winn and does not establish pretext.  Although Ms. Roberts stated that she "believed" Mr. Houston intended to get rid of older employees, the only evidence she presents to support this belief are her vague references to a handful of minor perceived slights, such as the fact that Mr. Houston "made it difficult" on her with respect to scheduling and took away her entry key for her location.  Further, although she also stated that Ms. Walker was a "snitch" and was "watching" older employees, she testified that Ms. Walker "snitched" "on everybody she [could] find out anything about," rather than just on older employees.  Likewise, although Ms. Roberts observed Ms. Walker "checking" on Ms. Roberts' work and that of Ms. Winn, there is no reason to believe that Ms. Walker did not check on everyone's work, as that was the nature of her job.  Finally, although Ms. Roberts testified about what took place at the Clarksville location with respect to Ms. Winn's discipline and termination, she acknowledged that she did not work at that location and that she learned about what had taken place there from Ms. Winn.

11

was terminated, in part because of her failure to secure inventory. (Docket No. 35 ¶¶ 21-24; Docket No. 29 Ex. 5.) As for the others, none of them had failed to secure inventory on three separate occasions, as had Ms. Winn, explaining any difference that Ms. Winn perceived in the discipline meted out as a result of an employee's failure to secure inventory.

Among the younger employees whom Cricket disciplined for failing to secure inventory was Mr. Butler, who shared responsibility with Ms. Winn for the November incident in which the inventory storage cabinets at the Clarksville location were left unlocked. Ms. Winn does not dispute that both she and Mr. Butler were disciplined following that incident, consistent with Cricket's policy that, where more than one employee is responsible for closing, both individuals are disciplined if inventory is not secured properly. (Docket No. 39 Ex., Houston Dep. at 33; Docket No. 39 Ex., Justice Dep. at 21.) Ms. Winn claims, however, that an email sent by Mr. Houston to Ms. Justice on November 14, 2006, shortly after the cabinets were found unlocked, demonstrates that Mr. Houston treated her differently than he treated Mr. Butler, because the email referenced her failure to lock the cabinets and made no reference to Mr. Butler.[5] However, Ms. Winn does not dispute that both she and Mr. Butler ultimately were disciplined for the incident, regardless of the content of the email. Moreover, she ignores the fact that she and Mr. Butler were not similarly situated at the time, as the November incident marked the second time that the cabinets were left unlocked on Ms. Winn's watch but only the first time that they were left unlocked on Mr. Butler's watch. Further, although Ms. Winn argues that Mr. Butler was provided with the opportunity for "follow-up reviews," whereas she was not, a brief review of

---

[5]The email states, "Please contact me at your convenience regarding J. Winn leaving the kiosk inventory cabinets unlocked again." (Docket No. 36 Ex. 7.)

12

the Mr. Butler's PIP documentation reveals that these so-called "follow-up reviews" merely consisted of a manager checking to ensure that Mr. Butler had, in fact, properly secured inventory. (Docket No. 29 Ex. 9 at 3.) There is no evidence that these reviews functioned at all to Mr. Butler's benefit by, for example, shortening his PIP. If anything, these reviews provided an opportunity for management to document any further failures on Mr. Butler's part. Thus, to the extent that Ms. Winn claims she was not reviewed, this may actually have worked to her advantage.

Ms. Winn states that she was a model employee and that, prior to Mr. Houston's arrival as her manager, she had never been disciplined for failing to secure inventory. She argues that Cricket's decision to terminate her was not reasonable, particularly given her track record and the fact there was only one instance, in January 2007, where she was *solely* responsible for failing to lock the inventory storage cabinets. Though her track record prior to September 2006 may have been commendable, her track record between September 2006 and January 2007 was not; in that four-month time span, the cabinets were left unlocked on her watch on three different occasions. The fact that she was not the *sole* responsible employee on any of the occasions does not defeat the fact that she was *a* responsible employee and that Cricket's policy was to discipline *all* of the responsible employees when inventory was unsecured.

The fact is that Cricket had a legitimate reason for terminating Ms. Winn's employment, and nothing in the record provides any evidence that Cricket's belief that Ms. Winn failed to secure inventory on three occasions was untrue or unreasonable nor that it was otherwise a pretext for discrimination. Indeed, there is no evidence beyond Ms. Winn's own suspicions that Mr. Houston had a preference for younger employees and planned to fire older employees and

13

replace them with younger employees, that Ms. Walker was lying when she reported that she discovered the cabinets unlocked, or that Mr. Houston, Ms. Walker, or anyone else at Cricket treated younger employees better than Ms. Winn or better than older employees in general. Though Ms. Winn denies the facts on which Cricket relied in disciplining and, ultimately, terminating her, a dispute over the facts that underlie an employer's legitimate business decision to terminate an employee does not satisfy the employee's burden of establishing pretext. *Irvin v. Airco Carbide*, 837 F.2d 724, 726 (6th Cir. 1987). Rather, the evidence demonstrates unequivocally that Cricket's decision to terminate Ms. Winn because of her failure to secure inventory was a reasonable response to the facts before it. As Ms. Winn has failed to establish pretext, summary judgment will be granted for the defendant with respect to this claim.

  *B.*  *Retaliation*

  To establish a *prima facie* case of retaliation under the ADEA, a plaintiff must demonstrate that (1) she engaged in a protected activity; (2) the employer knew of her protected activity; (3) the employer took an adverse employment action; and (4) a causal connection existed between the protected activity and the adverse employment action. *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007) (citing *Weigel v. Baptist Hosp. of East Tenn.*, 302 F.3d 367, 381 (6th Cir. 2002)).

  Cricket argues that Ms. Winn cannot establish a *prima facie* case of retaliation because she cannot establish either protected activity or a causal connection between protected activity and an adverse employment action. However, the court need not address these issues. Even assuming that Ms. Winn has established a *prima facie* case, summary judgment is nevertheless warranted because, as discussed in detail *supra*, Cricket has articulated a legitimate reason for

14

terminating Ms. Winn, and Ms. Winn has not established that this articulated reason was a pretext for discrimination.

## **CONCLUSION**

For the reasons discussed herein, the Motion for Summary Judgment of Defendant Cricket Communications, Inc. will be granted and the plaintiff's claims dismissed.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge